UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY; and THE OHIO CASUALTY INSURANCE COMPANY,<br><br>          Plaintiffs,<br><br>     v.<br><br>REICHHARDT & EBE ENGINEERING, INC.; THE CITY OF MOUNT VERNON; and COMMERCIAL COLD STORAGE, INC.,<br><br>          Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiffs Ohio Security Insurance Company and The Ohio Casualty Insurance Company bring this Complaint for Declaratory Judgment against Defendants Reichhardt & Ebe Engineering, Inc., The City of Mount Vernon, and Commercial Cold Storage, Inc.

## I.  THE PARTIES

1.      Plaintiff Ohio Security Insurance Company ("Ohio Security") is a company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkeley St., Boston, Massachusetts 02116.

2.      Plaintiff The Ohio Casualty Insurance Company ("Ohio Casualty") is a

company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

3.      Defendant Reichhardt & Ebe Engineering, Inc. ("R&E") is a Washington corporation with its principal place of business located at 423 Front Street, Lynden, Washington 98264-1920.

4.      Defendant The City of Mount Vernon, Washington (the "City") is a Washington municipal corporation.

5.      Defendant Commercial Cold Storage, Inc. ("CCS") is a Washington corporation with its principal place of business located at 1011 S 1st St, Mount Vernon, WA 98273-4238.

## II.  JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and plaintiffs are citizens of different states than any defendant.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## III.  FACTS

**A.      The Policies**

8.       Plaintiffs Ohio Security and Ohio Casualty (together, "Ohio") issued policies of liability insurance to Defendant R&E.

9.      Ohio Security issued a commercial package policy to R&E bearing policy no. BKS55331932 for an initial policy period incepting on January 4, 2016 and renewed annually through the policy period ending on ending on January 4, 2020, copies of which are attached as Exhibits "A" through "D" (collectively, the "Ohio Security Policies").  The Ohio Security Policies contain a liability limit of $1,000,000 each occurrence and $2,000,000 in the aggregate.

10.     Ohio Casualty issued a Commercial Umbrella Policy to R&E bearing policy no. USO55331932 for an initial policy period incepting on January 4, 2016 and renewed annually through the policy period ending on January 4, 2020, copies of which are attached as Exhibit "E" through "H" (collectively, the "Ohio Casualty Policies").  The Ohio Casualty Policies identify the Ohio Security Policies as "Underlying Insurance."

**B.      The Underlying Complaint**

11.     On February 24, 2021, Defendant CCS filed a "Complaint for Declaratory Relief, Specific Performance, and Damages" (the "Underlying Complaint") against Defendant City of Mount Vernon in Washington State Superior Court in and for Skagit County as Case No. 21-2-00131-29 (the "Underlying Action").   A copy of the Underlying Complaint is attached as Exhibit "I".

12.     In the Underlying Complaint, CCS alleges that it owns and operates a seafood processing and cold storage facility located along the Skagit River in the City of Mount Vernon, Washington.

13.     CSS alleges that its operations generate waste, which it disposes of using side sewer connections to the City's storm and sanitary sewer lines.   Stormwater from CCS's property also flowed into the Skagit River.

14.     According to the Underlying Complaint, the City began planning a "Downtown Flood Control Project" in 2014, phase 3B of which involved installing a floodwall across a portion of CSS's property.

15.     The City allegedly entered into a "Professional Services Agreement" (the "PSA") with Defendant R&E to serve as outside engineer for the Project.

16.     To make room for the new floodwall foundation, the Underlying Complaint alleges that the City had to remove and re-locate certain existing stormwater and sanitary sewer lines located on CCS's real property.

17.     To accommodate the relocation, CCS alleges that on February 4, 2016, the City

COMPLAINT FOR DECLARATORY JUDGMENT                    *Page 3*                    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

entered into two agreements with CSS: a Property Rights Acquisition and Settlement Agreement ("Settlement Agreement") and a Permanent Easement Agreement (the "Permanent Easement Agreement").

18.     The Underlying Complaint alleges that the Settlement Agreement and Permanent Easement Agreement imposed certain requirements and responsibilities on the City and CCS regarding the relocation of the stormwater and sanitary sewer lines.

19.     Section 3.5 of the Permanent Easement Agreement allegedly required the City to ensure that CCS "continues to have storm water disposal access to the Skagit River and/or public stormwater facilities following completion of the Project."

20.     CCS alleges that the City originally planned to ensure compliance with Section 3.5 of the Permanent Easement Agreement by running a separate stormwater collection sewer line from the CCS property that would carry floodwater to a bioswale south of the CCS property, where it would be treated and conveyed via a combined sanitary/stormwater sewer line either to the river or to the City's sewage treatment plant.

21.     According to CCS, Section 9 of the Settlement Agreement made CCS responsible for the repair and maintenance of any re-located underground utilities, including the storm and sanitary sewer lines.

22.     In order to fulfill the obligations of Section 9 of the Settlement Agreement, CCS claims it needs to be able to physically access the storm and sanitary sewer lines.

23.     Construction of the portion of the flood control project that crossed CCS's property allegedly occurred between March and June of 2017.

24.     According to CCS, the City constructed the floodwall utilizing a design that restricted CCS's ability to access the relocated sewer lines.

25.     CCS alleges that the City embedded the relocated sewer lines within the concrete foundation of the new floodwall, restricting its access to certain manholes embedded within the concrete foundation.

26.     As a result of this design, CCS claims it can no longer physically access the utility lines in order to perform its maintenance requirement or install new sewer lines "without damaging the floodwall foundation."

27.     In order to either maintain the sewer line or add new connections to the main line, CCS alleges it would have to "break up and remove the concrete and rebar" that both "encases the sewer line" and "serves as the foundation for the floodwall."  Since "neither FEMA nor the State Department of Ecology would ever allow such action," and because such action "would also violate the City's own Shoreline Master Program," CCS alleges that the City's design will "seriously restrict its options in terms of redevelopment of its property."

28.     In addition to the placement of the new line, CCS also complains about the manner in which the City provided for disposal of stormwater from CCS's property in its construction of the new floodwall foundation.

29.     Instead of running a separate stormwater collection sewer line from the CCS property, CCS alleges that the City changed its plans to involve the installation of so-called "canal" or "storm" gates within five stormwater lines that penetrate the floodwall foundation.

30.     The purpose of these "canal" or "storm" gates, CCS alleges, is ostensibly to allow stormwater from CCS's property to discharge directly into the Skagit River.

31.     In order to prevent floodwater from backing up through the gates into CCS property, however, CCS alleges that the gates must be manually closed before expected flood events.

32.     As a result of this design, CCS alleges that, during a flood event, stormwater will either accumulate on CCS's property behind the wall, if the gates are closed, or will back up into CCS's property, if the gates are open.

33.     CCS claims that this occurred during a November of 2017 flood event, and the City had to install pumps to remove the water from CCS's property.

34.     The Underlying Complaint contains three counts: (i) Declaratory Judgment; (ii)

COMPLAINT FOR DECLARATORY JUDGMENT                          **Page 5**            **Bullivant|Houser|Bailey PC**
                                                                                  925 Fourth Avenue, Suite 3800
                                                                                  Seattle, Washington 98104
                                                                                  Telephone: 206.292.8930

Breach of Contract; and (iii) Specific Performance.

35.     In these counts, CCS requests that the court declare that the City breached its obligations under the Settlement Agreement and the Permanent Easement Agreement by relocating the stormwater and sanitary sewer system in a manner that precludes CCS from performing repairs and in a manner that restricts CCS's ability to dispose of stormwater.

36.     In addition, CCS also requests "an award of all money damages legally available as a result of Defendant's breaches, acts, and/or omissions."

37.     CCS describes its damages as consisting of "the failure of the City to install new sanitary and stormwater sewer lines that will (i) enable CCS to continue to conduct its business on an uninterrupted basis and (ii) ensure that CCS has the ability to access, repair, and maintain those new sewer lines without causing damage to the foundation of the City's new floodwall."

**C.     The Third-Party Complaint**

38.     On March 16, 2021, Defendant City of Mount Vernon filed an Answer to CCS's Complaint and Third-Party Complaint (the "Third Party Complaint") against defendant R&E as a Third-Party Defendant, a copy of which is attached as Exhibit "J".

39.     In the Third-Party Complaint, the City alleges that it entered into the PSA with Defendant R&E on or about March 31, 2014.

40.     The PSE requires R&E to maintain CGL insurance in an amount not less than $1 million per occurrence and at least $2 million in the aggregate.

41.     In Section 10 of the PSA, the City alleges that R&E "agree[d] to defend and indemnify the City from any and all Claims arising out of, in connection with, or incident to any acts, errors, omissions, or conduct by the [City] (or its employees, agents, representatives subcontractors/subconsultants) relating to this Agreement."

42.     The City alleges that CCS demanded that the City relocate the sewer lines.

43.     The City alleges that it tendered CCS's demand and the Underlying Complaint to R&E for defense and indemnity.

COMPLAINT FOR DECLARATORY JUDGMENT          *Page 6*          **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

44.     The City alleges that R&E has not agreed to defend of indemnify the City with respect to the demand or the Underlying Complaint.

45.     The Third-Party Complaint contains two counts: (i) Declaratory Judgment; and (ii) breach of contract.

46.     The City requests an order declaring that R&E breached the PSA by declining to indemnify the City in the Underlying Action as well as damages for R&E's alleged breach, attorney's fees, and interest.

**D.     The Insurance Claims**

47.     The City tendered the Underlying Complaint to Ohio Security for defense and indemnity coverage, claiming coverage as an additional insured under the Ohio Security Policies issued to R&E.

48.     R&E tendered the Third-Party Complaint to Ohio Security for defense and indemnity coverage.

49.     In separate letters dated May 5, 2021, copies of which are attached as Exhibits "K" and "L", Ohio Security agreed to provide a defense to both the City and R&E in the Underlying Action.

50.     In the May 5, 2021 letters, Ohio Security explained that it did not believe it had an obligation to defend or indemnify the City or R&E and reserved all rights under the Policies, including the right to file a declaratory judgment action, withdraw from the defense, and obtain reimbursement of defense costs.

## IV.  COUNT I

### Declaratory Judgment – Underlying Complaint / City of Mount Vernon

51.     Ohio incorporates by reference all allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52.     The Ohio Security Policies and Ohio Casualty Policies (collectively, the "Policies") each constitute a binding and enforceable contract setting forth the rights and

COMPLAINT FOR DECLARATORY JUDGMENT          *Page 7*          **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

obligations of the parties to each Policy.

53.     An actual and justiciable controversy exists between the City and Ohio regarding the existence and scope of coverage under the Policies.

54.     Pursuant to the express terms, conditions, exclusions, and limitations of the Policies, there is no liability coverage available to the City for the claims and damages alleged against it in the Underlying Complaint.

55.     In relevant part, the insuring agreement of the Ohio Security Policies provides coverage for sums "the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that is "caused by an 'occurrence.'"

56.     The City is not a named insured under the Ohio Security Policies.

57.     Under Section II – Who Is An Insured, the Ohio Security Policies extend insured status to "executive officers," directors," and "stockholders" of a named insured that is a corporation in certain circumstances.  The City does not fall within any of these categories with respect to the named insured, R&E.

58.     The Ohio Security Policies contain a Commercial General Liability Extension Endorsement, Form CG 88 10 04 13.  Section G.1 of that endorsement amends Section II – Who is an Insured "to include as an insured any person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit."  The Ohio Security Policies specify, in relevant part, that "such person or organization is an additional insured but only with respect to liability for 'bodily injury' [or] 'property damage' … caused in whole or in part by: a. Your acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your on going operations for the additional insured that are the subject of the written contract or written agreement …"  To the extent the liability alleged in the Underlying Complaint does not involve bodily injury or property damage caused by R&E's ongoing operations for the City under that agreement, the City does not qualify as an insured or additional insured under the Ohio Security Policies and is not entitled to coverage.

COMPLAINT FOR DECLARATORY JUDGMENT                    *Page 8*                    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

59.     The Underlying Complaint does not seek to recover for damages because of "bodily injury" or "property damage" as required by the insuring agreement.  The Ohio Security Policies define "bodily injury" as, in relevant part, "physical injury, sickness or disease sustained by a person."  The Underlying Complaint does not allege any injury to a person.  Accordingly, there is no coverage available for "bodily injury" under Coverage A.

60.     The Underlying Complaint also does not seek to recover for damages because of "property damage" as the Ohio Security Policies define that term.  The Ohio Security Policies define "property damage" to mean, in relevant part, "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured."  The Underlying Complaint alleges a single event of water intrusion but does not appear to seek recovery for that event.  Instead, the Underlying Complaint seeks recovery for harm arising from the City's alleged failure to construct the flood control project in a manner consistent with the Settlement Agreement and Permanent Easement Agreement.  Such economic harm does not constitute "physical injury to," or "loss of use of," "tangible property," as required by the Ohio Security Policies.

61.     The Underlying Complaint does not allege any injuries "caused by an 'occurrence'" as required by the insuring agreement of the Ohio Security Policies.  The Ohio Security Policies define "occurrence" to require, in relevant part, an "accident."   The Underlying Complaint alleges that CCS suffered harm as a result of the City's construction activities based on a design it commissioned for the flood control project.  The Complaint does not allege that this design was accidental.  To the extent CCS's alleged injuries should have been the foreseeable result of that design, CCS's alleged injuries were not "caused by an 'occurrence.'"

62.     Furthermore, the Ohio Security Policies only afford coverage for bodily injury or property damage that "occurs during the policy period" and was not known to have occurred, in whole or in part, prior to the policy period.  The Underlying Complaint alleges that the

COMPLAINT FOR DECLARATORY JUDGMENT                    Page 9                    **Bullivant|Houser|Bailey PC**

construction of the flood control project began in March of 2017.  To the extent the damage occurred or was known, in whole or in part, prior to the inception of any policy period, the Ohio Security Policies do not afford coverage for this reason as well.

63.     Even if any of the injuries alleged in the Underlying Complaint did constitute "bodily injury" or "property damage" and were caused by an "occurrence" (which Ohio denies), exclusions would apply to exclude coverage for the claims and damages alleged in the Underlying Complaint.

64.     Exclusion 2.a. excludes coverage for, in relevant part, bodily injury or property damage "expected or intended from the standpoint of the insured."  The Underlying Complaint seeks recovery for the City's design for the flood control project, which appears to have been deliberate and not accidental in nature.  To the extent the injuries alleged in the Underlying Complaint were expected or intended, Exclusion 2.a. excludes coverage.

65.     Section G.2 of the Commercial General Liability Extension Endorsement adds an exclusion for "'bodily injury' or 'property damage' arising from the sole negligence of the additional insured."  To the extent the damages alleged in the Underlying Complaint arose from the City's sole negligence, this exclusion bars coverage.

66.     Section G.2 of the Commercial General Liability Extension Endorsement adds an exclusion for, in relevant part,

> "'bodily injury' [or] 'property damage' … arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including (1) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or (2) Supervisory, inspection, architectural or engineering activities.  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' … involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services."

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

67.     The Ohio Security Policies also contain Commercial General Liability Endorsement No. CG22430413 entitled Exclusion – Engineers, Architects or Surveyors Professional Liability.  That endorsement adds the following exclusion:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity. Professional services include:
>
> 1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> 2. Supervisory, inspection, architectural or engineering activities.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

The Underlying Complaint alleges that the City hired R&E to design the portion of the project that resulted in CCS's claimed damages.  R&E's design of the project constitutes a professional service.    Accordingly, Section G2 of the Commercial General Liability Extension Endorsement and the Professional Services Exclusion bar coverage for the claims and damages alleged in the Underlying Complaint.

68.     Except with respect to the definition of insured, the Ohio Casualty Policies contain substantially similar terms, conditions, exclusions, and limitations, which operate to bar coverage for the same reasons as those contained in the Ohio Security Policies.

69.     In addition, the Ohio Casualty Policies contain Endorsement Form CU88390714 entitled "Amendment of Definition of Insured."  That endorsement amends the definition of "insured" in the Policy's Commercial Umbrella Coverage Form to provide, in

relevant part, as follows:

> F. "Insured" means each of the following, to the extent set forth: …
>
> 5. Any person or organization who qualifies as an insured in the "underlying insurance" and does not qualify as an "Insured" in paragraphs 1., 2., 3., 4., 6., 7., or 8. of this definition F., but not beyond the extent of any limitation imposed under any contract or agreement. However:
>
> a. The coverage provided to such person or organization by this insurance: …
>
> (2) Will not be broader than the coverage afforded by the applicable "underlying insurance"; and
>
> b. If coverage provided to such person or organization is required by a contract or agreement, …
>
> If the minimum limits of insurance you agreed to provide such person or organization in a contract or agreement are wholly within the "underlying insurance", this policy shall not apply.

The City does not qualify as an "Insured" under paragraphs 1., 2., 3., 4., 6., 7., or 8 of the definition of "insured" in the Ohio Casualty Policies.  To the extent the City qualifies as an additional insured under the Ohio Security Policies, the coverage provided by the Ohio Casualty Policies is no broader than that provided by the Ohio Security Policies.  In addition, because R&E agreed to obtain coverage only up to the limits provided by the Ohio Security Policies, the Ohio Casualty Policies do not apply.

70.    For these reasons, Ohio has no duty to defend or indemnify the City under the Policies with respect to the Underlying Complaint and the Underlying Action.

## V.  COUNT II

### Declaratory Judgment – Third-Party Complaint / R&E

71.    Ohio incorporates by reference all allegations set forth in paragraphs 1 through 70 as if fully set forth herein.

72.    An actual and justiciable controversy exists between R&E and Ohio regarding the existence and scope of coverage under the Policies.

COMPLAINT FOR DECLARATORY JUDGMENT **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

73. To the extent the City seeks to recover from R&E for the claims and damages alleged in the Underlying Complaint, the Policies do not afford coverage for the reasons set forth in Count I above.

74. In addition, pursuant to the express terms, conditions, exclusions, and limitations of the Policies, there is no liability coverage available to the R&E for the claims and damages alleged against it in the Third-Party Complaint.

75. In relevant part, the insuring agreement of the Ohio Security Policies provides coverage for sums "the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that is "caused by an 'occurrence.'"

76. The Third-Party Complaint does not seek to recover for damages because of "bodily injury" or "property damage" as required by the insuring agreement. The Third-Party Complaint does not allege any injury to a person. Accordingly, there is no coverage available for "bodily injury" under Coverage A.

77. The Third-Party Complaint also does not seek to recover for damages because of "property damage." The Third-Party Complaint seeks damages because of a breach of contract, which does not involve injury to, or loss of use of, "tangible property" as required by the Ohio Security Policies.

78. The Third-Party Complaint does not allege any injuries "caused by an 'occurrence.'" The Third-Party Complaint alleges that R&E refused the City's tender of defense. The Third-Party Complaint does not allege that this refusal was accidental. Accordingly, the City's alleged injuries were not "caused by an 'occurrence.'"

79. The last policy period expired on January 4, 2020. The City did not demand defense or indemnity from R&E until February 1, 2021. Thus, the Third-Party Complaint does not allege any damages because of "bodily injury" or "property damage" during the policy period.

80. Even if any of the injuries alleged in the Third-Party Complaint did constitute

COMPLAINT FOR DECLARATORY JUDGMENT

Page 13

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

"bodily injury" or "property damage" and were caused by an "occurrence" (which Ohio denies), exclusions would apply to exclude coverage for the claims and damages alleged in the Third-Party Complaint.

81.    To the extent the injuries alleged in the Third-Party Complaint were expected or intended, Exclusion 2.a. excludes coverage.

82.    Exclusion 2.b excludes coverage for, in relevant part:

> "bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages: (1) that the insured would have in the absence of the contract or agreement…."

The Third-Party Complaint alleges that R&E is required to defend and indemnify the City based on the assumption of liability in a contract or agreement.  In the absence of the contract or agreement, R&E would have no obligation to defend or indemnify the City.  Accordingly, Exclusion 2.b bars coverage for the claims and damages alleged in the Third-Party Complaint.

83.    The claims and damages alleged in the Third-Party Complaint arise out of R&E's alleged breach of R&E's alleged obligations under the PSA, an agreement to provide professional services, to defend and indemnify the City for the allegations in the Complaint. The Complaint alleges that the damages at issue arise out of the design of the project, which constitutes a professional service.  Accordingly, the Professional Services Exclusion bars coverage for the claims and damages alleged in the Underlying Complaint.

## VI.  <u>COUNT III</u>

### Reimbursement of Defense Costs

84.    Ohio incorporates by reference all allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

85.    The Ohio Security Policies contain Endorsement No. IL 01 23 11 13, entitled Washington Changes – Defense Costs.  That endorsement provides: "If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none

of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred. The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs."

86.     Ohio informed the City and R&E that there may be no coverage available and that it was reserving its right to seek reimbursement of defense costs in coverage position letters dated May 5, 2021.

87.     Because there is no coverage under the Policy for the claims and damages alleged in the Underlying Complaint or Third-Party Complaint, Ohio Security has the right pursuant to Endorsement No. IL 01 23 11 13 to reimbursement of defense costs incurred in defense of the Underlying Action since May 5, 2021.

## **REQUEST FOR RELIEF**

WHEREFORE, Ohio prays for judgment in its favor and against Defendants as follows:

A.     Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that Ohio has no duty to defend or indemnify the City or R&E in the Underlying Action;

B.     Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that Ohio Security may withdraw from the defense currently being provided in the Underlying action;

C.     An order declaring that Liberty is entitled to recoup from the City and R&E the costs incurred in providing a defense under a reservation of rights; and

D.     Such other and further relief as the court deems just and appropriate.

/ /

/ /

/ /

COMPLAINT FOR DECLARATORY JUDGMENT

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

1

DATED:  July 20, 2021

2

BULLIVANT HOUSER BAILEY PC

3

4

By  */s/ Michael A. Guadagno*
        Michael A. Guadagno, WSBA #34633
        E-mail:  michael.guadagno@bullivant.com

5

6

7

By  */s/ Jared F. Kiess*
        Jared F. Kiess, WSBA #54532
        E-mail:  jared.kiess@bullivant.com

8

9

Attorneys for Plaintiffs Ohio Security Insurance
Company and The Ohio Casualty Insurance
Company

10

11

4828-6059-0578.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DECLARATORY JUDGMENT                    Page 16          **Bullivant|Houser|Bailey PC**
                                                                        925 Fourth Avenue, Suite 3800
                                                                        Seattle, Washington 98104
                                                                        Telephone: 206.292.8930